# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 6895 | **DATE** | 7/11/2002 |
| **CASE TITLE** | Berthoud vs. Veselik, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, the motions filed by the defendants pursuant to FRCP 12 are granted in part and denied in part. Specifically, Tower Square's motion to dismiss [23-1] Count VI of the complaint is granted but its motion to dismiss Counts I - IV is denied. Dermody's motion to dismiss [22-1] Count VI is denied by Emerald Investments motion to dismiss Count VI is granted. Finally, Emerald Investment Advisors and Emerald Fund I's motion for judgment on the pleadings [24-1] with respect to Count VI is granted but its motion as to Counts I-V is denied. This case is set for status on 7/25/200 @ 10:00 a.m.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | date docketed | |
| | Notified counsel by telephone. | | | | 27 |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| TSA | courtroom deputy's initials | | | mailing deputy initials | |

JUL 16 2002

CLERK, U.S. DISTRICT COURT

02 JUL 15 AM 10: 28

FILED-ED 10

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN D. BERTHOUD, individually and as )
Trustee, )
  )
  )
Plaintiff, )
  ) No. 01 C 6895
v. )
  ) Wayne R. Andersen
RANDALL J. VESELIK, KEVIN B. ) District Judge
DERMODY, H. BECK, INC., TOWER )
SQUARE SECURITIES, INC., )
HILLTOPPER ENTERPRISES, LLC, )
EMERALD FUND I, LP, )
EMERALD INVESTMENT ADVISORS, LTD., )
AND EMERALD INVESTMENTS, INC., )
  )
Defendants. )

**DOCKETED**

JUN 1 5 2002

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the motions filed by defendants Kevin Dermody, Emerald Investments, Inc, Tower Square Securities, Inc, Emerald Advisors, Inc, and Emerald Fund I, L.P. pursuant to Rule 12 of the Federal Rules of Civil Procedure. As each of the separate motions filed by the defendants attack the sufficiency of plaintiff's amended complaint, we have consolidated our rulings on the motions in one opinion. For the following reasons, the motions are granted in part and denied in part.

### BACKGROUND

On May 17, 2000, plaintiff John Berthoud met with defendants Randall Veselik and Kevin Dermody to discuss a potential investment by Berthoud in Hilltopper Enterprises, LLC, an investment vehicle whose purpose was to sell options to buy securities to qualified individuals

such as Berthoud. At all relevant times, Veselik and Dermody were the principals of Hilltopper. During the May 17 meeting, Veselik described the nature of Hilltopper's business. Specifically, Veselik represented that both he and Dermody had $300,000 of their own money invested in Hilltopper, that a hospital group had already committed to invest $500,000 in the business, and that they were willing to guarantee a return from an investment in Hilltopper at the rate of 12 percent annually.

On June 19, 2000, Hilltopper sent Berthoud a document entitled "Guarantee Contract Terms" which stated that Hilltopper had a $600,000 line of credit to secure investor deposits, that money could be withdrawn without penalty if the fund fell below "guaranteed levels," and that Hilltopper would use a "conservative covered call strategy to invest in the funds." (Complt. at ¶ 10.) Based on the meeting with Veselik and Dermody as well as the June 19 contract language, Berthoud gave $400,000 of his savings to Hilltopper on June 26, 2000 for investment at an anticipated annual rate of 12 percent.

According to the complaint, Berthoud alleges that, after he made his initial investment, Hilltopper and defendant Emerald Investments, Inc., which is an Illinois corporation owned and controlled by Dermody, sent him monthly newsletters concerning the status of his investment. In the first newsletter, entitled "The Emerald Advisor," Emerald Investments and Hilltopper stated that, for the first two months of its existence, the Hilltopper Fund was "up 15.7%." On September 1, 2000, Berthoud received issue number two of the Emerald Advisor which represented that the Hilltopper Fund had significantly outperformed other comparable funds and that it had "returned 26.25%" from June 15, 2000 through August 31, 2000. In his complaint, Berthoud has alleged that this information was materially false. Instead, for the first two months

2

of its existence, the fund slipped in value from $895,000 to $782,100. Further, for the period from June 15 to August 31, the only reason the fund increased its value was because another investor had contributed $3 million and this created the appearance of growth. In fact, the Hilltopper Fund did not return 26.25% to its investors during this time.

In the summer of 2000, defendant Tower Square Securities Inc. and Dermody sought and obtained a $3 million investment in Hilltopper from a teachers' pension fund in Jefferson Parish, Louisiana. Tower Square Securities is a broker-dealer for whom Dermody served as a registered representative. Tower Square, Dermody and Veselik used basically the same sales pitch to convince Jefferson Parish to invest in Hilltopper. According to Berthoud, the effect of the Jefferson Parish investment was to create the false appearance that Hilltopper was earning positive returns during a time when other stock market investments were losing money.

On October 20, 2000, Veselik met with Berthoud and proposed that he invest an additional $1 million in Hilltopper. Veselik told Berthoud that Jefferson Parish had invested $3.5 million in Hilltopper and that the fund additionally was handling $500,000 of hospital money plus money belonging personally to Dermody and Veselik. Again, Veselik promised a return of 12 percent on Berthoud's investment. Additionally, in October 2000, Emerald Investments and Hilltopper sent Berthoud issue number 3 of the Emerald Advisor which stated that the Hilltopper Fund "bucked the [negative] trend and was positive for its fourth consecutive month." As with the other representations made by the defendants, Berthoud has alleged that the third newsletter contained materially false information. Specifically, the complaint states that by October 20, 2000, Hilltopper had lost nearly half of the $3 million that Jefferson Parish had invested and, consequently, it was pursuing an investment strategy of outright speculation in

option trading. (Complt. at ¶ 18.) By the end of October, Hilltopper had lost over 80 percent of the money invested by Berthoud and the other contributors.

On November 30, 2000, unaware of Hilltopper's and the other defendants' misrepresentations, Berthoud agreed to invest an additional $1 million with Hilltopper under the same guarantees offered with respect to his first investment of $400,000. As a further inducement to persuade Berthoud to make the additional $1 million investment, Hilltopper allegedly caused an affiliated fund, defendant Emerald Fund I, LLC, of whom defendant Emerald Investment Advisors, Inc. was general partner, to guarantee a return of 12 percent on his investment. This guarantee was made in writing and signed by Veselik, who owned and was authorized to act on behalf of the general partner Emerald Investment Advisors, who, in turn, could legally bind its limited partnership Emerald Fund I.

On January 16, 2001, Hilltopper used Berthoud's $1 million, plus additional funds invested by Jefferson Parish, to pay $1,837,890 for options that required the market to move upward in order to return value. Hilltopper purchased no equity securities and engaged in no covered call activities with respect to these funds or any other funds that came into its possession after October 2000. As a result, Hilltopper's value continued to shrink as a result of unsuccessful speculation until it ceased operation on March 30, 2001. According to the complaint, by that time, Hilltopper had lost more than 90% of the funds entrusted to it by the different investors. In June 2001, Berthoud discovered that his $1.4 million investment was substantially lost.

On September 5, 2001, Berthoud filed the instant lawsuit against the defendants. On January 8, 2002, he filed the amended complaint which is being challenged in the instant motions. The amended complaint asserts six counts. Count I alleges violations of the federal

4

securities law. Count II alleges violations of the Illinois Securities Act. Count III alleges

common law fraud. Count IV alleges negligent supervision. Count V alleges breach of contract.

Count VI alleges breach of fiduciary duty.

## DISCUSSION

In ruling on a motion to dismiss, the Court must accept all factual allegations in the

complaint as true and draw all reasonable inferences in favor of the plaintiff. *Szumny v. Am.*

*Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001). The purpose of a motion to dismiss is not

to decide the merits of the challenged claims but to test the sufficiency of the complaint.

*Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996). A court will grant a

motion to dismiss only if it is impossible for the plaintiff to prevail under any set of facts that

could be proven consistent with the allegations. *Forseth v. Village of Sussex*, 199 F.3d 363, 368

(7th Cir. 2000).

### I.    Tower Square's Motion to Dismiss

In its motion, Tower Square challenges the sufficiency of Berthoud's amended complaint.

Specifically, Tower Square has requested that we dismiss Counts I-IV and VI of the complaint

against it. Tower Square's motion is granted in part and denied in part.

#### A.    Federal Securities Law Count

In Count I of his complaint, Berthoud has alleged that the defendants, including Tower

Square, violated provisions of the Securities Exchange Act of 1934. In particular, Berthoud has

asserted that the actions of the defendants in persuading him to invest $1.4 million in Hilltopper

were manipulative and deceptive, and, therefore, in violation of Section 10(b) of the Securities

Exchange Act and Rule 10b-5 of the Securities and Exchange Commission's regulations codified

in the Federal Register. With respect to Tower Square in particular, Berthoud contends that it is liable under the Securities Exchange Act because it controlled Dermody, either directly or indirectly, when he acted as Tower Square's registered representative in connection with the plaintiff's investment in Hilltopper.

To state a claim under Rule 10b-5, a complaint must allege that the defendant: 1) made a misstatement or omission; 2) of material fact; 3) with scienter; 4) in connection with the purchase or sale of securities; 5) upon which the plaintiff relied; and 6) that reliance proximately caused the plaintiff's damages. *See In re Healthcare Compare Corp. Sec. Litig.*, 75 F.3d 276, 280 (7th Cir. 1996). As an extension of potential liability under the Securities Exchange Act, section 20(a) of that act states that "every person who controls any person liable under any provision of this chapter or any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as the controlled person is liable." 15 U.S.C. § 78t(a). In this case, Berthoud has asserted that Tower Square is liable under the Securities Exchange Act because it had either direct or indirect control of Dermody with respect to the violations of Rule 10b-5 alleged in the complaint.

The Seventh Circuit has explained that liability under Section 20(a) can be imposed on entities that "actually participated in, that is, exercised control over, the operations of the person in general and, then, to whether the alleged control-person possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated . . . ." *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992). Additionally, as claims under Rule 10b-5 and Section 20(a) sound in fraud, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply. *See Shields v. Citytrust Bancorp., Inc.*, 25 F.3d

1124, 1127-28 (7th Cir. 1994). Under Rule 9(b), a plaintiff must plead with specificity the who, what, where, and when of the alleged fraud. *See Ackerman v. Northwestern Mut. Life Ins. Co*, 172 F.3d 467, 469 (7th Cir. 1999); *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994).

In this case, we conclude that, while the complaint is certainly not a model for alleging securities fraud, Berthoud has presented his allegations with sufficient particularity to survive this motion to dismiss. In the main body of the complaint, Berthoud has aptly described a scheme, concocted principally by Veselik and Dermody, to mislead certain individuals and entities, including the plaintiff, into investing large amounts of money in the Hilltopper Fund. Throughout the course of this alleged fraud, both Veselik and Dermody purportedly utilized their affiliated entities to dispense information concerning the vitality of the investments which they knew to be false. Based upon these misrepresentations, Berthoud and other entities invested large sums of money in Hilltopper, most of which was ultimately lost in foolhardy speculation in the options market. Accordingly, we find that Berthoud has adequately pled a 10b-5 action against Veselik and Dermody.

With respect to Tower Square, the complaint is not as specific but it nevertheless creates a strong inference that Tower Square was the entity that had primary control of Dermody's actions in connection with the fraud described above. Specifically, Berthoud has alleged that Tower Square was a broker-dealer of securities whose primary registered representative was Dermody. Furthermore, the complaint asserts that Tower Square and Dermody induced Jefferson Parish to invest $3 million, which investment was then used by Veselik to convince Berthoud to contribute an additional $1 million to the Hilltopper scheme after he had already invested

7

$400,000. Additionally, there is a strong inference that can be drawn from the complaint that Tower Square exerted either direct or indirect control over Dermody when he performed acts in furtherance of the fraud. Therefore, because Dermody was Tower Square's agent in the challenged Hilltopper scheme and because Dermody played a substantial role in that scheme, we conclude that the facts as alleged in the complaint state a Section 20(a) cause of action against Tower Square. The motion to dismiss Count I of the complaint is denied.

**B.    Illinois Securities Law Count**

In Count II of the complaint, Berthoud has alleged that Tower Square is liable under the Illinois Securities Act of 1953, 815 ILCS 5/1 *et seq.* In relevant part, the Illinois Securities Act states that "[e]very sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser . . . and the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer, or salesperson who shall have participated or aided in any way in making the sale . . . shall be jointly and severally liable to the purchaser." 815 ILCS 5/13A. A "dealer" is defined in the statute as "any person, other than a salesperson, or controlling person . . . who engages in this State . . . directly or indirectly, as agent, broker, or principal, in the business of offering, selling, buying and selling, or otherwise dealing or trading in securities issued by another person . . . ." 815 ILCS 5/2.7. We note at this point that the definition of controlling person in the Illinois Securities Act is substantially different than the definition provided in Section 20(a) of the federal Securities Exchange Act.

In this case, we conclude, as we did with the federal securities claim, that Berthoud has stated a cause of action under the Illinois Securities Act against Tower Square. Throughout the

8

complaint, Berthoud has pled with sufficient particularity that, at all relevant times, Tower Square served as a broker-dealer in the Hilltopper Fund scheme. While it is certainly true that Tower Square itself never sold any securities directly to the plaintiff, its involvement in this scheme arose through the actions of Dermody, its registered representative. As a result, because we are required to draw all reasonable inferences in the plaintiff's favor in considering a motion to dismiss, we find that Berthoud has adequately alleged not only that Tower Square was a "broker," as that term is defined in the Illinois Securities Act, but also that Tower Square aided Dermody and/or Veselik in making the sale of Hilltopper securities to the plaintiff. The motion to dismiss Count II is denied.

### C. Common Law Fraud Count

In Count III of the complaint, Berthoud has alleged that Tower Square is liable under the common law theory of fraud. Specifically, Berthoud contends that Tower Square is liable under the doctrine of *respondeat superior* because it benefitted from the actions of its registered representative Dermody. Under the doctrine of *respondeat superior*, an employer may be liable for the negligent, wilful, malicious or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer. *See Deloney v. Board of Educ. of Thornton Township*, 281 Ill. App. 3d 775, 784, 666 N.E.2d 792, 798 (1st Dist. 1996) (citing *Webb v. Jewel Cos.*, 137 Ill. App. 3d 1004, 1006, 485 N.E.2d 409, 411 (1st Dist. 1985)). Allegations of common law fraud are also subject to the heightened pleading requirements of Rule 9(b).

As with the other arguments raised in its motion to dismiss, we reject Tower Square's challenge to Count III of the complaint. As we discussed above, Berthoud has alleged the factual

predicate of the Hilltopper investment fraud with sufficient particularity to satisfy the requirements of Rule 9(b). This includes Tower Square's purported involvement in the scheme. Furthermore, Berthoud has asserted that Dermody was Tower Square's agent with respect to the plan to induce the plaintiff and Jefferson Parish to invest large sums of money in a fund that was supposed to guarantee a 12 percent annual return. In order to entice Berthoud to contribute an additional $1 million to the Hilltopper Fund, the complaint alleges that Tower Square, through its representative Dermody, convinced Jefferson Parish to invest $3 million in the fund. There can be little doubt then that Dermody's actions as Tower Square's registered representative in furtherance of the investment fraud were performed within the scope of his employment as an agent of Tower Square. Accordingly, Berthoud has adequately pled a cause of action for common law fraud against Tower Square. The motion to dismiss Count III is denied.

### D. Negligent Supervision Count

In Count IV, Berthoud has alleged that Tower Square is liable under the common law doctrine of negligent supervision. To state a cause of action in Illinois for negligent failure to supervise an employee, a plaintiff must show that the employer owed some duty to the plaintiff. *See Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989) (citing *Rubin v. Yellow Cab Co.*, 154 Ill. App. 3d 336, 507 N.E.2d 114, 115 (1st Dist. 1987)); *Emjayco v. Morgan Stanley & Co., Inc.*, 901 F. Supp. 1397, 1401-02 (C.D. Ill. 1995). Tower Square argues that this count should be dismissed because Berthoud cannot establish that Tower Square owed him a duty as he personally did not have an account with Tower Square. We disagree.

10

Tower Square's argument that this count should be dismissed derives from a very narrow reading of the holdings in both *Champion Parts* and *Emjayco*. While it is true that both courts based their ultimate conclusion on the nature of the customer relationship between the plaintiff and defendant, the primary holding in each case was that a plaintiff must show that the employer owed *some* duty to the plaintiff in order to state a cause of action for negligent supervision. The *Champion Parts* and *Emjayco* courts did not rule that the duty to account holders was the only duty sufficient to allege negligent supervision; rather it was merely one of many such duties which could sustain a negligent supervision count. In the case at bar, Berthoud has alleged that the duty he was owed by Tower Square was to reasonably "supervise and control the activities of . . . Dermody to insure compliance with applicable laws and regulations governing the sale of securities." (Complt. at ¶ 44.) Therefore, we conclude that Berthoud has alleged a valid negligent supervision cause of action against Tower Square. The motion to dismiss Count IV is denied.

### E.    Breach of Fiduciary Duty Count

Finally, Count VI of the complaint alleges that Tower Square is liable for breach of fiduciary duty. In order to state a claim for breach of fiduciary duty under Illinois law, a plaintiff must allege in his complaint that: 1) a fiduciary duty existed between the plaintiff and the defendant; 2) the duty was breached by the defendant; and 3) the breach proximately caused the injury of which plaintiff complains. *Neade v. Portes*, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (2000); *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 414 (N.D. Ill. 2001).

Based upon our examination of the allegations contained in Count VI, we conclude that Berthoud has not alleged a fiduciary duty between Tower Square and himself. Paragraph 52 of

11

the complaint describes the purported fiduciary duty owed to the plaintiff by Veselik, Dermody, and Hilltopper. However, there is absolutely no mention of Tower Square specifically in the entire count. Instead, there is an oblique reference to the "remaining defendants" who allegedly are liable for breach of fiduciary duty either as "direct knowing participants in the breach or under principles of *respondeat superior*." (Complt. at ¶ 52.) Even under the liberal notice pleading standards of the Federal Rules of Civil Procedure, this type of vague and cursory allegation is insufficient to place the defendant on notice as to the charges it must eventually defend. Therefore, we grant Tower Square's motion to dismiss Count VI of the complaint.

## II.     Dermody and Emerald Investments, Inc.'s Motion to Dismiss

In their motion, individual defendant Dermody and corporate defendant Emerald Investments, Inc. seek to dismiss Count VI of the complaint. For the following reasons, the motion is granted in part and denied in part.

Individual defendant Dermody contends in his motion that the breach of fiduciary duty claim in Count VI should be dismissed because the complaint does not allege the existence of a fiduciary duty between Berthoud and Dermody. As Dermody himself argues in his motion, a fiduciary duty can be alleged if a plaintiff has entrusted money to a defendant and the defendant has accepted the trust and responsibility placed in him by the plaintiff. Drawing all reasonable inferences in favor of the plaintiff, we conclude that Berthoud has sufficiently alleged a fiduciary duty between himself and Dermody. The complaint is replete with allegations that Dermody was a principal player in the scheme to induce Berthoud to contribute $1.4 million to the Hilltopper Fund. He was present during the first sales pitch to Berthoud, after which the plaintiff agreed to make an initial investment of $400,000. There are allegations in the complaint that Dermody and

Veselik then took the money which was placed in their care and used it to make questionable investments in the options market. All along, both Dermody and Veselik, through their respective corporate entities, mislead Berthoud and the other investors into thinking their investments were garnering a 12 percent annual return. Based on these allegations, we conclude that the complaint properly states a cause of action for breach of fiduciary duty against defendant Dermody. His motion to dismiss Count VI is denied.

Defendant Emerald Investments has also filed a motion to dismiss Count VI of the complaint. The resolution of this motion is identical to that of the motion filed by Tower Square discussed above. In both situations, the complaint is devoid of any allegation that the corporate defendants had a fiduciary duty to Berthoud. Paragraph 52 of the complaint merely states that "the remaining defendants [including Tower Square and Emerald Investments] are liable for breach of fiduciary duty either as direct knowing participants in the breach or under principles of *respondeat superior*." This is insufficient to state a cause of action for breach of fiduciary duty and, thus, Emerald Investment's motion to dismiss is granted as to Count VI.

## III.    Emerald Investment Investors, Ltd and Emerald Fund I, L.P.'s Motion for Judgment on the Pleadings

In essence, Emerald Investment Investors and Emerald Fund I are challenging the sufficiency of the allegations against them in the complaint in much the same way that Tower Square did. Accordingly, we incorporate by reference our discussion above of Tower Square's motion to dismiss Counts I-IV and Count VI of the complaint, and we conclude that the defendants are entitled to a judgment on Count VI but the motion is denied with respect to Counts I-IV of the complaint.

Aside from these five counts, the defendants' motion also seems to apply to Count V of the complaint, which alleges breach of contract. As a quick reminder, Emerald Fund I is an Illinois limited partnership of which Emerald Investment Advisors is the general partner. Veselik owns Emerald Investment Advisors and through that ownership controls Emerald Fund I. Emerald Investment Advisors and Emerald Fund I's role in the alleged securities fraud is relatively small. As stated in the complaint, these two defendants were used as an inducement to persuade Berthoud to invest an additional $1 million in the Hilltopper Fund. Specifically, the investment contract stated that Emerald Fund I would guarantee a 12 percent return on the investment. The contract also stated that Emerald Fund I would cover any shortfall in the investment's return. The only signature on the contract was that of Veselik.

It is undisputed that Emerald Fund I did not pay Berthoud anything as a result of the defendants' unwise investment strategy. The only issue with respect to this motion is whether Emerald Investment Advisors and Emerald Fund I can be liable for breach of contract if there is no indication that anyone signed the investment contract on their behalf. We conclude that both Emerald Investment Advisors and Emerald Fund I were parties to the contract. As mentioned above, Veselik was the owner of Emerald Investment Advisors which, in turn, was the general partner of Emerald Fund I. It is axiomatic that a general partner has the legal authority to bind its limited partnership to a contract. *See* 805 ILCS 205/9(1) (the "Illinois Uniform Partnership Act") ("Every partner is an agent of the partnership for the purposes of its business, and the act of every partner . . . binds the partnership. . . .") Here, Veselik signed a contract which explicitly stated that a limited partnership, Emerald Fund I, would guarantee a 12 percent annual return on an investment. Veselik could do this because he had signature power on behalf of the general

partner of the limited partnership. Thus, the complaint properly alleges the existence of a legally binding obligation on both Emerald Investment Advisors and Emerald Fund I. Therefore, we conclude that Emerald Investment Advisors and Emerald Fund I are not entitled to judgment on Count V of the complaint.

## CONCLUSION

For the foregoing reasons, the motions filed by the defendants pursuant to Federal Rule of Civil Procedure 12 are granted in part and denied in part. Specifically, Tower Square's motion to dismiss Count VI of the complaint is granted but its motion to dismiss Counts I-IV is denied. Dermody's motion to dismiss Count VI is denied but Emerald Investments motion to dismiss Count VI is granted. Finally, Emerald Investment Advisors and Emerald Fund I's motion for judgment on the pleadings with respect to Count VI is granted but its motion as to Counts I-V is denied. This case is set for status on July 25, 2002 at 10:00 a.m.

Wayne R. Andersen
United States District Judge

Dated: _July 11, 2002_

15