# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN BERTHOUD, individually and as trustee, | )<br>)<br>) |
| Plaintiff, | ) Case No. 01-cv-6895<br>)<br>) Judge Robert M. Dow, Jr. |
| v. | )<br>) |
| RANDALL VESELIK, et al., | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's second amended petition to revive judgment [142] is granted in part and denied in part. Plaintiff's May 9, 2003 judgment against Defendant Veselik is revived in the original amount of $1,400,000 (with Veselik to be credited at least $168,012.52 and perhaps as much as $290,762.52 in the event that Plaintiff attempts to collect additional amounts in supplemental proceedings or execution), plus post-judgment interest in an amount to be determined in supplemental proceedings.[1] As a final housekeeping matter, the Court directs the Clerk of Court to remove the gavel by the unnumbered docket entry dated 6/19/2018, as Defendant's motion to quash the original petition to revive judgment is moot given the subsequent filing of amended petitions to revive judgment [127, 142].

**I.   Background**

Way back in 2001, Plaintiff John Berthoud ("Plaintiff") filed this case against Defendants Randall Veselik ("Veselik") Kevin Dermody, H. Beck, Inc., Tower Square Securities, Inc. ("Tower Square"), Hilltopper Enterprises, LLC ("Hilltopper"), Emerald Fund I, LP, Emerald Investment Advisors, Ltd., and Emerald Investments, Inc. (collectively, "Defendants") for alleged

---

[1] As explained below, the Court declines to quantify a specific amount of post-judgment interest.

violations of federal and Illinois securities laws, deceptive practices, common law fraud, negligent supervision, breach of contract, and breach of fiduciary duty in connection with Plaintiff's contract to invest $1,400,000 in Hilltopper. See generally [1]. The docket sheet shows that Plaintiff's total demand was $1,800,000.

On May 1, 2003, Judge Andersen (who presided over the case until it was reassigned to this Court in 2012), granted Defendant H. Beck Inc.'s motion to dismiss and terminated H. Beck Inc. as a party. See [81]; see also [80] (motion to dismiss on basis that arbitrator denied all of the claims asserted by Plaintiff against H. Beck Inc.). On May 9, 2003, Judge Andersen entered judgment in favor of Plaintiff and against Defendant Veselik in the amount of $1,400,000. See [84]. On June 22, 2004, Judge Anderson dismissed Defendant Tower Square Securities [96] due to "a settlement" between those parties [95]. And in July 2004, Judge Anderson dismissed the case with prejudice pursuant to stipulation [98] after the remaining parties "reached an agreement to settle the case in principle" [97]. The docket sheet does not reflect whether Plaintiff entered into formal settlement agreements with any of the settling Defendants.

Over the next several years, Plaintiff issued a number of citations to discover the assets of certain Defendants. Most recently, in June 2018, Plaintiff filed a petition to revive the judgment against Defendant Veselik [120]. Veselik objected and moved to quash on the bases that (1) the judgment has, on information and belief, been satisfied because "Plaintiff has received several substantial payments from insurance companies that have compensated Plaintiff fully for his loss"; and (2) Plaintiff's petition allegedly did not comply with the requirements of 735 ILCS 5/2-1602 because it was not served on Veselik and did not contain a statement as to credits received on the judgment. [124] at 2-4. Veselik also requested "leave to conduct discovery" and "an evidentiary

hearing as to his defense of satisfaction of judgment." *Id*. at 4. Plaintiff filed an amended petition [127], which Veselik again opposed.

On August 20, 2018, the Court denied Plaintiff's original and amended petitions without prejudice [141]. The Court explained that 735 ILCS 5/2-1602 required Plaintiff "to include a statement of any 'credits to the judgment,' while at the same time directing that an order reviving a judgment shall be for the original amount of the judgment and stipulating that [c]redits to the judgment shall be reflected by the plaintiff in supplemental proceedings or execution." [141] at 3. The Court therefore ordered Plaintiff to submit an amended petition that incorporated a statement of credits for payments that Plaintiff acknowledged he had received from other Defendants. *Id*. The Court overruled Veselik's objection that he had a satisfaction defense as to which he was entitled to discovery because that defense was not evident from the face of the record, as the Court determined was required by governing case law applying the revival statute. The Court's disposition left any "further efforts to drill down on potential credits to 'supplemental proceedings or execution' as the statute provides." *Id.* (quoting 735 ILCS 5/2-1602(d)).

Plaintiff filed a second amended petition, in which he provided a statement of credits to the judgment for payments by Defendants Hilltopper ($168,012.52), Tower Square ($112,500), and Veselik ($5,250). See [142] at 1-2. Plaintiff requested revival of the May 9, 2003 judgment in the amount of $1,400,000, with the revival order showing a credit against the Judgment in the amount of $168,012.52, thereby leaving a Judgment balance of $1,231,987.48; plus post-judgment interest on the judgment balance to be calculated pursuant to 28 U.S.C 1961(a), with a credit against the accrued interest in the amount of $117,750.00.

Veselik moved for reconsideration of the Court's August 20, 2018 order and also requested leave to file defenses to the second amended petition to revive judgment. See [144]. Veselik

argued that the Court prematurely found that he had no valid defenses and overruled objections that he had yet to assert. Veselik contended that he is entitled to file an answer and affirmative defenses to the petition and is also entitled to a hearing on his defenses. *Id*. at 2. He asserted two defenses to the motion: that the judgment was satisfied, and that the judgment was released. Veselik contended that under Illinois law, both arguments are recognized defenses to a petition to revive judgment. See *id*. at 4. Veselik requested leave to conduct discovery as to the amount of any settlement payments Plaintiff received from other Defendants and as to the contents of any written settlement agreements.

The Court granted in part and denied in part Defendant's motion for reconsideration. See [146]. The Court allowed Defendant an opportunity to file an answer and affirmative defenses to Plaintiff's second amended petition to revive judgment and ordered the parties to submit briefs addressing "what the courts mean when they confine the inquiry that a court may make in considering a petition to revive a judgment to the 'face of the record.'" *Id*. at 2.

Defendant filed an answer and affirmative defenses. In his first affirmative defense, satisfaction, Defendant asserts that Plaintiff has received the following payments: $5,250 from the law firm Connor & Gallagher; $168,012.52 from the clerk for the Twenty-Fourth Judicial District Court in Jefferson Parish, Louisiana; and payments of "an unknown amount made by on or behalf of Tower Square pursuant to a settlement agreement." [147] at 6-7. Defendant also asserts on information and belief that Plaintiff "may have also received settlement or restitution payments" from a number of other entities. See *id*. at 7. Plaintiff maintains that "[u]nder Illinois law, any settlement payments received by Plaintiff from any other defendant in this matter or any payments received in order to compensate Plaintiff for his injury suffered as a result of his investment should be credited against the Judgment." *Id*. (citing 740 ILCS 100/2(c) (Joint Tortfeasor Contribution

4

Act); *Henry by Henry v. St. John's Hospital*, 138 Ill. 2d 533, 543 (1990)). In his second affirmative defense, release, Defendant contends that "[t]he record of this proceeding indicates that Plaintiff entered into settlement agreements with the other defendants in this matter" and "[b]y implication, upon settling the matter and dismissing the case with prejudice, Plaintiff released any and all claims related to his $1.4 million investment including his claims against Veselik." *Id*. at 8.

The parties also submitted briefs in response to the Court's August 23 order. Their arguments are discussed below.

## II.     Legal Standard

Federal Rule of Civil Procedure 69 provides that execution of a judgment must proceed according to state law. Under Illinois law, a judgment is valid for seven years, but it can be revived (see 735 ILCS 5/12-108(a)) within twenty years of the date of judgment (see 735 ILCS 5/13-218). In relevant part, the procedure for reviving a judgment is as follows:

> (a) A judgment may be revived by filing a petition to revive the judgment in the seventh year after its entry, or in the seventh year after its last revival, or in the twentieth year after its entry, or at any other time within 20 years after its entry if the judgment becomes dormant[.]
>
> (b) A petition to revive a judgment *** shall include a statement as to the original date and amount of the judgment, court costs expended, accrued interest, and credits to the judgment, if any.
> * * *
>
> (d) An order reviving a judgment shall be for the original amount of the judgment. The plaintiff may recover interest and court costs from the date of the original judgment. Credits to the judgment shall be reflected by the plaintiff in supplemental proceedings or execution.

735 ILCS 5/2-1602.

## III.    Analysis

In his answer and affirmative defenses to Plaintiff's second amended petition to revive judgment, Veselik alleges that Plaintiff is not entitled to revival because the judgment against

5

Veselik has been satisfied or released since the judgment was entered. In light of Plaintiff's pleadings, the Court must consider 1) whether Veselik's answer and affirmative defenses should be considered part of the "record" that the Court is allowed to consider in deciding the petition to revive judgment; and 2) if they are part of the record, whether they are sufficient to stave off the petition, at least until Veselik has had an opportunity to conduct discovery.

Unfortunately, the case law is not clear on either question. In its prior order, the Court explained that Illinois recognizes only two defenses to a motion to revive judgment—that the original judgment did not exist, and that the original judgment has been satisfied or discharged—and that these defenses must "appear on the face of the record." [141] at 3 (citing *Dep't of Public Aid ex rel. McGinnis v. McGinnis*, 643 N.E.2d 281, 285–86 (Ill. App. 1994); *Dec and Aque v. Manning*, 618 N.E.2d 367, 373 (Ill. App. 1993)).[2] Nonetheless, neither *McGinnis* nor *Dec* explains what the "record" consists of or whether it is limited to information that was part of the record at the time the revival petition was filed.

The Court's prior order also cited *TDK Electronics Corp. v. Draiman*, 321 F.3d 677, 680 (7th Cir. 2003), in which the Seventh Circuit explained that "[n]ormally entry of a reviving order should be a clerical task; all it entails is assurance that the judgment has not been vacated or marked satisfied since its rendition." *TDK* suggests—albeit in dicta—that the relevant "record" consists of the docket sheet and its contents as they existed at the time the revival petition was filed. The

---

[2] Veselik argues that these cases "are distinguishable because the defendants in those cases did not object to revival on the grounds that the judgment was satisfied, but instead asserted that the judgment to be revived was void or did not exist." [148] at 6. While that is true, it is immaterial, because each case makes clear that the court is limited to the face of the record regardless of the defense(s) raised. See *McGinnis*, 643 N.E.2d at 285–86 ("There are only two permissible defenses to a revival action: the denial of the existence of the judgment, or proof of satisfaction or discharge of the action, and these defenses must appear on the face of the record."); *Dec*, 618 N.E.2d at 373 ("Our supreme court has held that the only defense to [a scire facias] action is either a denial of the existence of the judgment or proof of a subsequent satisfaction or discharge of the judgment. These defenses must appear on the face of the record without reference to any matters aliunde the record.").

Seventh Circuit appears to have been discussing the revival of judgment remedy in a more general sense (citing to the federal rule on revival, a Wright & Miller treatise section discussing that rule, and two out-of-circuit cases), rather than specifically interpreting Illinois' revival statute or summarizing applicable Illinois case law. See *TDK*, 321 F.3d at 680. *TDK* also leaves open the possibility that in some *abnormal* cases, more may be required before a revival order is entered.

The other federal case cited in the Court's prior order, *Suraleb, Inc. v. Production Association "Minsk Tractor Works," Republic of Belarus*, 2014 WL 238300, at *3 (N.D. Ill. Jan. 21, 2014), relied on *TDK* in concluding that it was harmless error for the magistrate judge not to require the plaintiff to amend its revival petition to include additional credits. Judge Marovich explained that "[t]he obvious purpose of § 2–1602(b)'s requirement (that the credits be listed on the petition to revive) is to allow a court to determine whether a judgment has been satisfied before reviving said judgment." *Id*. A full statement of credits was not required in *Suraleb*, because the defendant "d[id] not suggest that the judgment has been satisfied," and could "not make out a defense to an order reviving judgment." *Id*. In this case, by contrast, Veselik contends in his answer and affirmative defenses that the judgment has been fully satisfied (or released). *Suraleb* therefore does not address the question of how the Court should proceed in the face of Veselik's pleadings. Nor do several other Illinois state law cases in which the defendant claimed to have been denied the ability to assert a defense, but failed to plead or provide any support for the defense. See *First Nat'l Bank of Marengo v. Loffelmacher*, 603 N.E.2d 80, 84 (Ill. App. 1992) (explaining that plaintiff was entitled to revive judgment where "defendants have failed to affirmatively plead, and the record does not support, the alternative defense of satisfaction or discharge" and concluding that, "[t]here being no issue of fact on the face of the record, we therefore conclude that the trial court ruled correctly when it granted plaintiff's motion for

summary judgment and revived the judgment previously rendered"); *McGinnis*, 643 N.E.2d at 285-86 (rejecting defendant's argument that trial court should not have revived action because "[he] never had an opportunity to litigate or raise defenses which might show that the plaintiff had no right against defendant to have the judgment executed," where defendant was given opportunity at three hearings but "either failed to appear or refused to discuss the merits of the case").

Veselik identifies a few Illinois state court cases that at least arguably support the notion of a broader "record" that might include pleadings that a judgment has been discharged. In *Bank of Eau Claire v. Reed*, 83 N.E. 820 (Ill. 1908), the Illinois Supreme Court explained that while a "plea of *nul tiel* record" (that the judgment does not exist) "is to be determined by the court from an inspection of the record itself," "[a] defendant *may plead matter in discharge of the judgment* which raises an issue of fact for a jury." *Id*. at 821 (emphasis added). Plaintiff argues that this "confusing" case is not good precedent because it "was a *scire facias* proceeding which was abolished by §2-1601 of the Code of Civil Procedure." [151] at 5. But since the abolition of *scire facias*, Illinois courts have continued to rely on *Bank of Eau Claire* in interpreting the modern revival of judgment statute and limited the defenses available under the statute to denial of the existence of judgment or proof of satisfaction or discharge. See *Dec*, 618 N.E.2d at 373; *Prairie Production*, 600 N.E.2d at 526-27; see also *Sarkissian v. Chicago Bd. of Educ.*, 776 N.E.2d 195, 209 (Ill. 2002) (Freeman, J., specially concurring).

Veselik also cites to *Prairie Production*, 600 N.E.2d at 526, in which the plaintiff sought to revive a judgment against debtors who had received a bankruptcy discharge. The court held that the bankruptcy discharge did not prevent revival of judgment liens against the debtors' property, but the order of revival should have been limited to operating *in rem* only. *Id.* The court

8

also held that the trial court could and should have considered the enforceability of the judgment lien at the hearing on the plaintiff's motion to revive. The court explained:

> [T]he underlying question involved in a proceeding of this nature is whether the plaintiff has a right against a defendant to have execution on the judgment sought to be revived. *** The trial court should have considered defendants' assertion that the lien of the underlying judgment on the abandoned residential property had been discharged. *Under the format of the pleadings here, upon defendants' showing of a valid discharge in bankruptcy*, the burden of proof was on plaintiff to show the existence of a valid lien to support the *in rem* revival sought.

*Id.* at 527 (emphasis added). The court deferred to a pending appeal in federal court, which sought to determine the enforceability of the judgment lien. *Id*. at 524. Plaintiff contends that *Prairie Production* is not relevant because that case was "concerned with the effect of the adjudication of a secured claim versus an unsecured claim in bankruptcy in a revival proceeding," not "whether evidence outside the record can be introduced in a revival proceeding to show payments on a judgment." [151] at 5. Be that as it may, the court's consideration of the defendant's pleading of a valid discharge gives the Court pause about entering a revival judgment without giving further consideration to the release and satisfaction defenses plead in Veselik's answer.[3]

But regardless of whether Veselik's answer and affirmative defenses should be considered part of the "record" to which the Court's inquiry must be confined, Veselik has failed to identify any statutory authority or case law indicating that he has a right to engage in discovery before the Court rules on Defendant's petition. None of the cases cited by Veselik suggest that discovery

---

[3] The two other cases cited by Veselik—*Sacor Financial, Inc. v. Knight*, 2016 IL App (5th) 160005-U, 2016 WL 6393724 (Ill. App. 2016), and *Blakeslee's Storage Warehouses v. City of Chicago*, 11 N.E.2d 42 (Ill. App. 1937)—are more easily addressed. *Sacor* is a nonprecedential case that Veselik should not have cited. See Ill. Sup. Ct. R. 23(e)(1). *Blakeslee's* is not helpful to Veselik because the plaintiff there sought not to revive a judgment, but to be paid interest on a judgment that had already been paid in full, which was not allowed in a *scire facias* action. *Blakeslee's*, 11 N.E.2d at 44-45.

must or should be allowed. Further, Veselik's allegations concerning discharge and satisfaction (and his affidavit in support thereof) are entirely speculative.[4]

A plausible affirmative defense—that is one that could survive either a motion to strike or a motion to dismiss—(1) "must be a proper affirmative defense, (2) it must be adequately pleaded under Rules 8 and 9; and (3) it must be able to withstand a Rule 12(b)(6) challenge." *Divine v. Volunteers of America of Illinois*, 319 F. Supp. 3d 994, 999 (N.D. Ill. 2018) (citing *Hughes v. Napleton's Holdings, LLC*, 2016 WL 6624224, at *2 (N.D. Ill. Nov. 9, 2016)). Under the 12(b)(6) standard, pleadings must allege facts which, when taken as true, "'plausibly suggest that the [party] has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)).

In his satisfaction affirmative defense, see [147] at 6-7, and in his sworn affidavit containing the same information, see [139], Veselik asserts that "Plaintiff received substantial payments from or on behalf of the other defendants in this matter which compensated Plaintiff for all damages arising from his $1.4 million investment." [147] at 6. But Veselik's factual pleadings do not support the conclusion that Plaintiff was compensated for the full $1.4 million. The only actual payments identified are for $5,250 from the law firm of Connor & Gallagher and $168,012.52 from the clerk for the Twenty-Fourth Judicial District in Jefferson Parish, Louisiana. *Id*. at 7-8. These payments fall far short of compensating Plaintiff for his entire $1.4 million

---

[4] Plaintiff has denied and objected to Veselik's allegations. See [149] at 3 (denying allegations supporting Veselik's satisfaction and release defenses; asking Court to strike allegation that "[p]resumably, Plaintiff received compensation for his claims under such settlement agreements and in exchange Plaintiff released his claims and dismissed the litigation," on basis that it is "premised upon unfounded assumptions" and allegation that "[o]n information and belief, Plaintiff may have also received settlement or restitution payments" from entities other than those identified in Plaintiff's list of credits, on basis that "they consist of conjecture and are not based upon Veselik's personal knowledge").

judgment against Veselik. Veselik also speculates that Tower Square Securities, Inc. made a settlement payment to Plaintiff, based on a 2003 annual financial report from that company which allegedly represented that Tower Square had "settled two claims for certain civil action that related to the activities of a former registered representative for approximately $5 million." *Id*. at 7. But the cited report does not identify the parties with whom Tower Square settled or the amount of any particular settlement payment.

To be sure, Plaintiff has already acknowledged in his statement of credits that he received $112,500 from Tower Square. But Veselik's assertion that Plaintiff "may have also received settlement or restitution payments" from a number of other entities is completely unsupported. *Id*. Indeed, more than half of the entities that he identifies were not defendants in this case. Compare [19] at 1 to [147] at 7. And payments from two of the entities (Tower Square and Hilltopper) are already identified in Plaintiff's second amended motion to revive judgment. See [142] at 1. Without any additional factual allegations supporting his conclusion that Plaintiff received sufficient payments to satisfy his full $1,400,000 judgment, Veselik fails to plausibly allege a satisfaction defense. Instead, Plaintiff's allegations simply suggest (as Plaintiff concedes) that Veselik may be entitled to credits for the payments that other defendants made to Plaintiff. The revival of judgment statute specifically contemplates that any such credits will be handled "in supplemental proceedings or execution," not as part of the petition for revival. 735 ILCS 5/2-1602.

In support of his release defense, Veselik points out that the docket sheet shows that 1) in June 2004, Plaintiff reached a settlement with Tower Square Securities, Inc.; and 2) in July 2004, Plaintiff reached a settlement with the remaining defendants. Defendant contends that since the action was dismissed in its entirety pursuant to settlement and stipulation, "[p]resumably, Plaintiff

11

received a settlement payment and in exchange executed a release of any and all claims related to his $1.4 million investment including his claims against Veselik." [148] at 4; see also [147] at 8. However, there is no basis for Veselik's presumption. Veselik does not identify any case law suggesting that a plaintiff's settlement with and dismissal of some defendants results in the release of the plaintiff's claims against all other defendants. Nor does Veselik contend that he was a party to or intended third-party beneficiary of any settlement between Plaintiff and other Defendants. Instead, at the time that the remaining Defendants settled and were dismissed, judgment had already been entered against Veselik for $1.4 million. Under these facts, there is no plausible basis for concluding that Plaintiff entered into any settlement agreement that provided for a release of his judgment against Veselik.

In sum, Veselik's affirmative defenses are insufficiently pled to survive either a motion to strike or a motion to dismiss. Cf. *Edwards v. Mack Trucks, Inc.*, 310 F.R.D. 382, 387 (N.D. Ill. 2015) (defendants failed to plead sufficient facts to set forth plausible affirmative defenses, and, thus, striking their affirmative defenses was warranted where pleadings lacked sufficient factual matter to provide requisite short and plain statement of the defenses that were plausible on their face). As such, they cannot be used to justify discovery, nor can they stave off the Court's entry of an order reviving Plaintiff's judgment.

There are two other matters that the Court must address: estoppel and interest. As to estoppel, Defendant argues that Plaintiff is "estopped from asserting that satisfaction of judgment is not apparent from the face of the record, because he has made multiple false representations under oath to the Federal Court as to whether he received any payments on the Judgment." [148] at 8. The sole case on which Veselik relies is inapposite. In *A.A. Store Fixture Co, Inc., v. Kouzoudas*, 651 N.E.2d 525, 532 (Ill. App. 1995), the court held that the defendant in an action to

recover on a guaranty of note was estopped from denying the plaintiff's corporate status at the time it executed the guaranty, where there was no question that the defendant contracted with the plaintiff as a corporate entity. This specialized body of estoppel law has no relevance to the current action. Nor could the traditional elements of estoppel be satisfied here, because Veselik does not contend that he relied on Plaintiff's alleged misrepresentations concerning the payments he received, or that he suffered any detriment as a result. See *Richardson v. City of Chicago*, 314 F. Supp. 3d 999, 1011 (N.D. Ill. 2018). Further, the Court cannot say that Plaintiff engaged in any wrongdoing by not including certain credits in his original motion to revive judgment. Plaintiff has asserted that Illinois' Joint Tortfeasor Act does not apply because his underlying claims are for statutory securities violations. The Court need not resolve that issue because Plaintiff has agreed to deduct for other Defendants' payments to expedite this matter. Whether or not that position is legally correct, it does not appear to be frivolous or sanctionable.

Finally, the Court considers Plaintiff's request for post-judgment interest. In the second amended motion to revive judgment, Plaintiff asserts that he is "entitled to statutory post-judgment interest on the Judgment or on any balance thereof at the rate of 9% per annum." [142] at 2. And in his brief, Plaintiff asserts that he is seeking "post-judgment interest on the Judgment balance *** calculated pursuant to 28 U.S.C § 1961(a)." [151] at 7. Defendant argues that Plaintiff "improperly seeks to recover post-judgment interest at a rate of 9% under the Illinois statute, however the Illinois statutory judgment rate does not apply to a Judgment entered in a Federal district court." [148] at 8. Plaintiff does not respond to this argument or explain why he chose 9% as the applicable interest rate.

"Post judgment interest accrues on all federal judgments." *Suraleb*, 2014 WL 238300, at *3; see also 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case

13

recovered in a district court."). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id*. The judgment in favor of Plaintiff was entered on May 9, 2003. The Court's cursory research indicates that the applicable interest rate at that time was less than 2%, not the 9% that Plaintiff seeks. Regardless, "nothing in the Illinois code suggests that the amount of post judgment interest must be calculated and included in an order reviving a judgment." *Suraleb*, 2014 WL 238300, at *3. Given this, and the apparent error in Plaintiff's calculation of interest, the Court will, as the Court did in *Suraleb*, "revive the judgment in its original form, without quantifying an amount of post judgment interest." *Id*.

## IV. Conclusion

For these reasons, Plaintiff's second amended motion to enforce judgment [142] is granted in part and denied in part. Plaintiff's May 9, 2003 judgment against Defendant Veselik is revived in the original amount of $1,400,000 (with Veselik to be credited at least $168,012.52 and perhaps as much as $290,762.50 in supplemental proceedings or execution) plus post-judgment interest (also to be determined in supplemental proceedings or execution). As a final housekeeping matter, the Court directs the Clerk of Court to remove the gavel by the unnumbered docket entry dated 6/19/2018, as Defendant's motion to quash the original petition to revive judgment is moot given the subsequent filing of amended petitions to revive judgment [127, 142].

Dated: December 27, 2018

_____
Robert M. Dow, Jr.
United States District Judge